# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

DEBORAH S.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 2:18-cv-00632-BAT

**ORDER REMANDING FOR PAYMENT OF BENEFITS**

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g), 1381, seeking review of the denial of her application for benefits under Title II of the Social Security Act. Plaintiff alleges the ALJ erred in rejecting her treating physician's opinion and in weighing Plaintiff's allegations regarding her impairments. Dkt. 13. Plaintiff's claim has been pending for over eight years; her insured status expired over seven years ago; two ALJs have held three hearings, and the Court has twice reversed the ALJ's decisions and remanded for further proceedings (*see* 2:13-cv-00279-BAT and 2:16-cv-00157-BAT).

For the reasons set forth herein, the Court **REVERSES** the Commissioner's final decision and **REMANDS** for immediate payment of benefits under sentence four of 42 U.S.C. § 405(g).

ORDER REMANDING FOR PAYMENT OF BENEFITS - 1

**BACKGROUND**

Plaintiff filed her claim for disability benefits in March 2010. Tr. 122-23. Following an administrative hearing (Tr. 34-62), ALJ Glenn Meyers denied the claim in November 2011. Tr. 8-28. Plaintiff appealed the denial in February 2013. Tr. 1287 (2:13-cv-00279-BAT). The Court found that ALJ Meyers had not properly considered Plaintiff's fibromyalgia and remanded the claim for further proceedings. Tr. 1279-85.

After a second hearing in September 2014 (Tr. 1219-43), ALJ Meyers issued a second decision in January 2015 denying Plaintiff's claim. Tr. 1191-1209. Plaintiff appealed this decision. Tr. 2417 (2:16-cv-00157-BAT). The Court remanded the case a second time, finding that ALJ Meyers had erred in rejecting the opinion of Plaintiff's treating physician, Mary Read, M.D., and in rejecting Plaintiff's allegations about the severity and functional impact of her impairments. ALJ Wayne Araki held a third hearing on September 28, 2017 and took testimony from a vocational consultant. Tr. 2357-70. ALJ Araki issued a decision finding Plaintiff not disabled on February 27, 2018. Tr. 2329-46.

Utilizing the five-step disability evaluation process,[1] the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of November 4, 2006 through her date of last insured of March 31, 2011. Tr. 2333-2334. At steps two and three, the ALJ found Plaintiff had the following severe impairments that did not meet or equal the requirements of a listed impairment: lumbar spine degenerative disc disease; status-post left shoulder surgery; Hashimoto's thyroiditis; anemia; fibromyalgia; depressive disorder; and anxiety disorder.[2] *Id*., p. 2335. The ALJ determined Plaintiff had the residual functional capacity (RFC) to perform

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

sedentary work as defined in 20 CFR 404.1567(a), and further, that she could:

> frequently reach with the left dominant upper extremity and occasionally stoop, squat, crouch, crawl, kneel, climb, and balance. She could perform unskilled, repetitive, routine work with occasional contact with coworkers, supervisors, and the public. She would have been off-task 5% of the time, but still meet minimum requirements, and be absent from work an average of once a month.

*Id.*, p. 2337. At steps four and five, the ALJ determined Plaintiff lacked the RFC to perform past relevant work but considering her age, education, work experience, and RFC, there were three jobs that existed in significant numbers in the national economy (*i.e.*, table worker, document preparer, and masker) that she could perform and therefore, she was not disabled. Tr. 2346.

## DISCUSSION

### A. The ALJ Harmfully Erred in Weighing Dr. Read's Opinion

Dr. Read was Plaintiff's treating physician throughout the period and her opinion warranted the greatest weight. *See Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) *citing Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (internal quotations omitted) (alterations in original); *see also Singleton v. Colvin*, 646 Fed.Appx. 509, 511 (9th Cir. 2016).

The uncontradicted opinion of a treating physician can only be rejected for "clear and convincing reasons that are supported by substantial evidence." *Ghanim*, 759 F.3d at 1160-61 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). An ALJ may reject the contradicted opinion of a treating source by providing specific and legitimate reasons supported by substantial evidence. *See Revels v. Berryhill*, 874 F.3d 648, 664 (9th Cir. 2017).

Dr. Read treated Plaintiff primarily for her back injury, while other physician's treated Plaintiff's shoulder injury. *See*, *e.g.*, Tr. 611, 612. In March 2007, Dr. Read referred Plaintiff to a spine specialist to determine if more aggressive treatment was warranted. Tr. 578. In April 2007, Dr. Read opined that Plaintiff had reached maximum medical improvement, further measures would not be curative, and Plaintiff could perform her past relevant work as an office manager if her commute and other aggravating factors were not considered. Tr. 568-569.

In January 2008 after Plaintiff's workers' compensation claim was reopened due to worsening of her back pain (Tr. 678-679), Dr. Read assessed her as limited to lifting no more than ten pounds on even a "seldom" basis; to sitting and standing/walking on a seldom-to-occasional basis with a need to alternate positions (Tr. 232, 680); and not capable of maintaining full-time work (Tr. 638, 700).

In December 2009, during a two-day physical capacities evaluation, Plaintiff was unable to complete all of the activities requested because of her symptoms, and she experienced a significant increase of symptoms in the days following the testing. Tr. 634. Plaintiff was assessed as able to perform sedentary work with the ability to alternate between sitting and standing, but only on a part-time basis. Tr. 422. Dr. Read felt that these limitations were permanent and recommended that Plaintiff be given a pension, rather than retraining, as she was not able to perform full-time work. Tr. 423, 426, 429, 957. Dr. Read continued to opine that Plaintiff had reached maximum medical improvement with limitations as noted in the physical capacities evaluation, and the only other recommended treatment would be sessions of therapy with a spine specialist to help develop a home exercise program and to help Plaintiff gain knowledge about her condition and limitations. Tr. 876.

Plaintiff attended an IME in February 2011. Tr. 977. Dr. Read agreed with the report but did not agree with the conclusion that Plaintiff was capable of full-time work. Tr. 978. Dr. Read's disagreement was based on her own experiences with Plaintiff and on the objective findings documented in the 2009 physical capacities evaluation. Tr. 978. Dr. Read specifically noted the objective findings from the IME and discussed the failure of the IME physician to consider the physical capacities evaluation. Tr. 977. In March 2011, just prior to Plaintiff's date last insured, Dr. Read reiterated that Plaintiff had not demonstrated an ability to function in a sedentary environment on a full-time basis. Tr. 988.

In May 2011, Plaintiff completed a second, two-day physical capacities evaluation. Tr. 991. While she was able to complete the activities requested, she required more than two weeks to recover from the evaluation. Tr. 991. Dr. Read had concerns about the conclusions reached and contacted the therapist to clarify Plaintiff's ability to sustain work activity. Tr. 992. The therapist agreed that Plaintiff was limited to part-time work, but there was a disagreement as to whether part-time work was an acceptable goal given her past work. Tr. 995, 999.

Dr. Read continued to opine that Plaintiff would not be able to sustain full-time work throughout the period following Plaintiff's date last insured. Tr. 996, 1000, 1143, 1450, 1558, 1578, 1882, 1883, 1885. Dr. Read completed a physical capacities questionnaire in September 2011. Tr. 1082-86. Dr. Read opined that Plaintiff would be significantly limited in her ability to sit, stand, or walk on a consistent basis and that Plaintiff would miss at least four days of work a month as a result of her back impairment. Tr. 1083-1085. Plaintiff attended a work-conditioning program in September 2011 but was discharged due to her poor tolerance for participation and lack of progress. Tr. 1145.

In 2015, ALJ Meyers discounted Dr. Read's opinion for several reasons:

> I, however, accord limited weight to Dr. Read's multiple opinions or comments, indicating that due to her back condition, the claimant was totally and permanently disabled or was significantly limited in her ability to perform even sedentary work (See 1F1-2; 4F3; 7F30; 29F; 35Fl6; 48Fl-6). These opinions/ statements are inconsistent with the longitudinal treatment records prior to the date last insured, which document fairly benign objective findings and only conservative treatment. As discussed above, MRIs of the lumbar spine from 2007 through 2011 demonstrated only mild degenerative changes at from L3 through S1, with small annular tears at L4-5 and L5-Sl, but no evidence of significant foraminal or central canal stenosis and no evidence of nerve root impingement. Additionally, while physical examinations revealed decreased range of motion, tenderness, and stiffness in the lumbar spine, they also showed that she retained a symmetric gait, a symmetric reflexes, a normal ability to heel and toe walk, painless range of motion in the hips, and intact motor strength and sensation in both legs, with no numbness and tingling and no radicular signs on straight leg raising (See e.g., 5F7, 24; 7Fl 8, 26, 29, 32, 35, 180, 209, 229, 233, 242, 244, 260, 263, 280, 286, 289, 299; 304; 19F21; 26F20-21, 27, 36, 47). Furthermore, she was not taking any regular medication for her back condition (19F11, 46; 29F2), and a specialist had concluded that surgery was not indicated (7F280). I find that the claimant did have limitations due to her back condition, but the overall evidence does not support a finding that the claimant could not sustain sedentary exertional work prior to the date the last insured.

Tr. 1204-05. The Court considered and rejected this reasoning because the ALJ described the evidence without offering any explanation as to why Dr. Read's interpretation of the record was wrong and his was correct. Tr. 2408-12. Dkt. 14, pp. 16-20. For example, the ALJ rejected the ALJ's interpretations of the MRI findings and substituted his own; improperly disregarded Plaintiff's epidural type injections; ignored medical conclusions that further injections and surgery would not cure Plaintiff's back problems; and failed to explain how Plaintiff's symmetric gait, reflexes and other range of motion contradicted Dr. Read's opinions. *Id.*

In 2018, ALJ Araki similarly gave little weight to Dr. Read's opinion:

> However, I accord little weight to Dr. Read's other opinions and comments indicating that the claimant was totally and permanently disabled or was significantly limited in her ability to perform even sedentary work (See Exhibit lF.l-2; 4F3; 7F.27, 30; 29F; 35F.l6; 48F.l-6). Although Dr. Read was a treating source during the period at issue and would ordinarily carry great weight, I find

such restriction implicated in the doctor's opinions and statements to be inconsistent with the claimant's presentation over the longitudinal period. In April 2007, less than 6 months following the alleged onset date, Dr. Read stated that "as far as her course and imaging findings, her pain seems most consistent with discogenic pain, which would be consistent with the annular tears noted at the 14-5 and L5-S l level" (Exhibit 7F.173).

Yet, in spite of the pain complaints and imaging, the functional impact of such did not result in signs of diminished strength or other motor deficit. Rather, the claimant, more frequently than not, had no gait deficits, no strength deficit, no sensation deficit (See e.g. Exhibit 7F.26, 29, 32, 35, 206, 209, 216, 221, 229, 238, 244, 263, 283, 286, 289, 294). Upon exam in April 2007, the claimant had an asymmetric gait. However, the claimant did not demonstrate any significant muscle weakness or atrophy. She had normal reflexes. She did not have any neurogenic changes. While some spasm and decreased range of motion were indicated, this was of "mild" irritability intermittently (Exhibit 7F.174). For much of the period at issue, through the date last insured, Dr. Read's subsequent clinical observations of the claimant suggested a greater functional capacity than her opinions implicated. For example, the claimant had an overall symmetric gait. Positional changes were noted to be slow, but overall smooth (See e.g. Exhibit 7F.26, 29, 32, 35, 206, 209, 216, 221, 229, 238, 244, 263, 283, 286, 289, 294).

Moreover, repeated lumbar spine imaging did not show significant changes during the period at issue. Following the mild degenerative changes and small annular tears at L4-5 and L5-Sl with no significant facet or nerve root involvement seen in 2007 (Exhibit 7F.182, 280), 2009 imaging showed no significant interval change, but for a new, mild disc bulge at L3-4 (7F.143, 206). 2010 lumbar spine imaging was essentially unchanged from April 2009 with continued mild findings at L3-4, L4-5, and LS-S1 and no significant central canal or neural foraminal stenosis at any level (26F.64-65).

Tr. 2341-42.

Although ALJ Araki's summary is lengthier, his reasons are no more specific than those provided by ALJ Meyers. Like ALJ Meyers, ALJ Araki also fails to explain how his interpretation of the MRI findings or Plaintiff's functionality is more correct than that of her treating physician's. ALJ Araki also failed to consider the two physical capacities evaluations that assessed Plaintiff as limited to part-time sedentary work, notes documenting Plaintiff's failure to improve with physical therapy, and the increase in Plaintiff's symptoms following

ORDER REMANDING FOR PAYMENT OF BENEFITS - 7

these evaluations, which all supported Dr. Read's opinion that Plaintiff could not sustain work activity.

ALJ Araki also found that activities that Plaintiff had "routinely performed during the period at issue suggested a greater functional capacity than Dr. Read's opinions implicated," and specifically noted that Plaintiff was the primary care-taker for her child and reported spending much of her day caring for her child. Tr. 2341. ALJ Araki referred to activities such as preparing simple meals, activities with her child, household chores, driving, and not needing reminders for personal care or medication management. Tr. 2341-42. However, ALJ Araki failed to consider relevant qualifying statements regarding these activities. *See Revels*, 874 F.3d at 664. For example, Plaintiff could only engage in activities depending on how she was feeling on a given day (Tr. 155-62, 177-84); she was told to space out her activities and pay attention to her body mechanics to avoid exacerbations (Tr. 296, 694, 894); she had to sit a lot (Tr. 757); her ability to cook, clean, and shop was limited by her pain (Tr. 758); she limited herself to ten to fifteen minutes of these activities before resting (Tr. 179); she rearranged her home to accommodate her limitations (Tr. 758); her husband (who worked from home a lot) and her mother (Tr. 178) provided help; she could put laundry in the washer and dryer and fold it, but could not carry the laundry basket (Tr. 179).

None of the activities cited by ALJ Araki were performed in a manner that was inconsistent with Dr. Read's opinion that Plaintiff would be limited to no more than part-time work even if Plaintiff had not offered qualified statements about them. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("The sorts of daily activities Diedrich could perform are also not readily "transferrable to a work environment. House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as

ORDER REMANDING FOR PAYMENT OF BENEFITS - 8

occasional shopping outside the home, are not similar to typical work responsibilities.") (internal citations omitted); *see also Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

In sum, ALJ Araki again erred in failing to give specific and legitimate reasons to reject Dr. Read's opinions and therefore, harmfully erred.

**B.     The ALJ Harmfully Erred in Discounting Plaintiff's Allegations**

In evaluating the effect of pain and other symptoms on Plaintiff's residual functional capacity, the ALJ must determine if the Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. *See* 20 C.F.R. § 404.1529. If so, the ALJ must next evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's capacity for work. *See id*. If there is no evidence of malingering, the ALJ may reject Plaintiff's testimony about the severity of her symptoms only by making specific findings stating clear and convincing reasons supported by substantial evidence for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

ALJ Meyers previously found that Plaintiff's allegations were not entirely credible. Tr. 1201-04. The Court concluded that the reasons offered by ALJ Meyers were not clear and convincing. Tr. 2412-13. On remand, ALJ Araki gave the same reasons for discrediting Plaintiff's testimony. Tr. 1238-41. *Compare* Tr. 1201 and Tr. 2338-39.

ORDER REMANDING FOR PAYMENT OF BENEFITS - 9

Other than restating the finding, ALJ Araki did not cure the deficiencies in the reasons previously rejected by the Court. ALJ Araki's reliance on an inconsistency in the objective medical evidence fails as he did nothing more than summarize the evidence he felt was inconsistent without explaining his finding. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *see also* SSR 16-3p. ALJ Araki's reliance on this ground is also error in light of the Court's determination that he erred in rejecting Dr. Read's opinions.

**C.     Scope of Remand**

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. The district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir.2004)(citations omitted). All three requirements are met here.

First, ALJ Araki failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and Dr. Read's opinions that Plaintiff would be limited to no more than part-time work based on limitations arising from her lumbar impairment. These errors impacted the ALJ's assessment of Plaintiff's RFC and Step Five conclusion that she could perform other sedentary

work on a full-time basis and was not disabled and were, therefore, harmful. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (An error is harmless if it is "inconsequential to the ultimate nondisability determination").

Second, there are no outstanding issues that must be resolved before a determination of disability can be made. Here, the Commissioner argues that the only appropriate remedy is to again remand for administrative proceedings because this Court "has already determined that there 'is some dispute over whether [Plaintiff] is limited to part-time work,' because 'the examiners who performed the 2011 Independent Medical Examination opined that [Plaintiff] could perform full-time work.' … Plaintiff points to no evidence in the record that resolves this conflict now." Dkt. 16, p. 6 (citing Tr. 2414). However, although he was given an opportunity to correct this deficiency during the third administrative hearing and in his decision, ALJ Araki failed to do so. Instead, he merely expanded on the summary of evidence previously rejected.

Third, if ALJ Araki had given appropriate weight to Dr. Read's opinion, he would have found that Plaintiff could not perform work activities on a regular and continuing basis and therefore, she is disabled. *See* SSR 96-9p ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule.").

Finally, remanding for further determination would simply create "an unfair 'heads we win; tails, let's play again' system of disability benefits of adjudication" that the Ninth Circuit has warned against. *See Benecke,* 379 F.3d 587, 595 (9th Cir. 2004); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). As two

ALJs have already held three hearings over the past eight years and have been remanded based on legally insufficient findings, no useful purpose would be served by allowing further duplicative and unnecessary proceedings.

## CONCLUSION

Accordingly, the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Social Security Administration for payment of benefits under Sentence Four of 42 U.S.C. § 405(g).

DATED this 3rd day of December, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge